UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------ x
JOSEPH DEANGELIS, ET AL.            :     Civil Action No.
                                    :     11 CV 7866 (VM) (JCF)
     -against-                      :
                                    :     ECF Case
JON S. CORZINE, ET AL.              :
                                    :
------------------------------------ x

SAPERE CTA FUND, L.P.,              :

          Plaintiff,               :

     -against-                      :

JON S. CORZINE, BRADLEY I. ABELOW,  :
HENRI J. STEENKAMP, DAVID P. BOLGER,
EILEEN S. FUSCO, DAVID GELBER,      :
MARTIN J. GLYNN, EDWARD L.
GOLDBERG, DAVID I. SCHAMIS, ROBERT  :
S. SLOAN, LAURIE R. FERBER, JOHN
RANALD MACDONALD, CHRISTINE A.      :     ORAL ARGUMENT REQUESTED
SERWINSKI, MICHAEL G. STOCKMAN,
DENNIS A. KLEJNA, THOMAS F.         :     Civil Action No.
CONNOLLY, DAVID SIMONS, J.C.        :     11 Civ. 9114 (VM)
FLOWERS & CO, LLC, CHRISTY VAVRA,
VINAY MAHAJAN, EDITH O'BRIEN,       :
ROBERT LYONS, DAVID DUNNE,
MATTHEW V. BESGEN, SUMIT ADVANI,    :
MATTHEW M. HUGHEY, TIM MUNDT,
PRICEWATERHOUSECOOPERS LLP,         :

          Defendants.              :

                                    :

------------------------------------ x
```

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
MATTHEW V. BESGEN, MATTHEW M. HUGHEY, DENNIS A. KLEJNA,
ROBERT LYONS, JOHN RANALD MACDONALD, DAVID SIMONS,
AND MICHAEL G. STOCKMAN'S MOTION TO DISMISS THE
AMENDED COMPLAINT FILED BY SAPERE CTA FUND, L.P.**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................. 2

    A.    Allegations regarding Defendant John Ranald MacDonald .................................... 3

    B.    Allegations Regarding Defendant Matthew V. Besgen ............................................ 4

    C.    Allegations Regarding Defendants David Simons and Robert Lyons .................... 5

    D.    Allegations Regarding Defendant Michael G. Stockman ........................................ 6

    E.    Allegations regarding Defendant Dennis A. Klejna ................................................ 7

    F.    Allegations Regarding Defendant Matthew M. Hughey ......................................... 9

CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abell v. Potomac Ins. Co.,*
858 F.2d 1104 (5th Cir. 1988) .............................................................. 8

*Airlines Reporting Corp. v. Aero Voyagers, Inc.,*
721 F. Supp. 579 (S.D.N.Y. 1989) ..................................................... 2, 3

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................ 2, 10

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.,*
798 F. Supp. 2d 533 (S.D.N.Y. 2011) ................................................... 2

*Bell Atl. Corp. v. Twombley,*
550 U.S. 544 (2007) .................................................................... 2, 6, 10

*Eaves v. Designs for Finance,*
785 F. Supp. 2d 229 (S.D.N.Y. 2011) .................................................. 9

*In re Refco Inc. Sec. Litig.,*
826 F. Supp. 2d 478 (S.D.N.Y. 2011) .................................................. 8

*Schatz v. Rosenberg,*
943 F.2d 485 (4th Cir. 1991) ............................................................... 8

## STATUTES

17 CFR § 1.25 ....................................................................... 5, 6, 7, 8

17 CFR § 166.3 ............................................................................... 7

Defendants Matthew V. Besgen, Matthew M. Hughey, Dennis A. Klejna, Robert Lyons, John Ranald MacDonald, David Simons and Michael G. Stockman (the "Sapere-Only Defendants") join in the Memorandum of Law in Support of the Individual Defendants' Motion to Dismiss Sapere's Amended Complaint and respectfully submit this supplemental memorandum to address issues unique to the Sapere-Only Defendants.[1]

## PRELIMINARY STATEMENT

In its Amended Complaint, Sapere has done precisely what this Court has admonished it not to do. Not only has Sapere asserted baseless claims, but it has asserted those baseless claims against the Sapere-Only Defendants, who have <u>not</u> been sued by the customer class plaintiffs, the Chapter 11 Trustee or the CFTC. With the exception of Mr. MacDonald, none of the Sapere-Only Defendants have been sued by the Securities Plaintiffs, either. And for good reason.

The Chapter 11 Trustee, the SIPA Trustee, customer class action plaintiffs and CFTC have each conducted extensive investigations into the very issues at the heart of Sapere's complaint. All have filed complaints against individuals associated with MF Global. But *none* of those complaints has named any of the Sapere-Only Defendants, and nothing in the voluminous investigative reports by the two Trustees supports Sapere's claims against the Sapere-Only Defendants.

Yet, Sapere seeks to hold the Sapere-Only Defendants liable as "MFG Defendants" for everything from negligence and CEA violations to breach of fiduciary duty and trespass to chattels. But Sapere does not plead facts that connect the Sapere-Only Defendants to the purported wrongful conduct that caused Sapere's alleged loss. Sapere does not allege that it had any contact with the Sapere-Only Defendants or that any of the Sapere-Only Defendants

---

[1]  All defined terms have the same meaning as those in the Memorandum of Law in Support of the Individual Defendants' Motion to Dismiss the Amended Complaint of Sapere CTA Fund, LP, dated Dec. 6, 2013 ("Joint Mem.").

mishandled segregated or secured customer funds.  Nor does Sapere plead facts to show

knowledge by these Defendants of purported misuse of segregated or secured funds.  Sapere thus

fails to plead any plausible claims for relief against any of these individual employee

Defendants.  Accordingly, Sapere's Amended Complaint should be dismissed as against the

Sapere-Only Defendants, with prejudice.

## **ARGUMENT**

### THE AMENDED COMPLAINT FAILS TO STATE ANY CLAIM AGAINST THE SAPERE-ONLY DEFENDANTS.

Factual allegations "are accepted as true for purposes of the motion to dismiss only."

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.,* 798 F. Supp. 2d 533, 534 n.1

(S.D.N.Y. 2011).  But that tenet "is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S.

662, 678 (2009), citing *Bell Atl. Corp. v. Twombley,* 550 U.S. 544, 555 (2007).  Thus, "pleadings

that … are no more than conclusions[] are not entitled to the assumption of truth." *Id.* at 679.

Moreover, in order to survive a motion to dismiss, a complaint must state "a plausible

claim for relief." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct," the complaint must be dismissed because the pleader has

failed to carry its burden to show that it "is entitled to relief." *Id.*

In addition, Sapere cannot hold corporate officers and employees liable for the tortious

conduct of MFGI or MF Global merely because they were officers or employees. *See Airlines*

*Reporting Corp. v. Aero Voyagers, Inc.,* 721 F. Supp. 579, 585 (S.D.N.Y. 1989).  To state a

claim against corporate officers for the corporation's alleged misconduct, "it must be shown that

the officer was a participant in the wrongful conduct." *Id.*  Here, Sapere's factual allegations do

not state any "plausible claim for relief" against the Sapere-Only Defendants.  Nor do they allege

that the Sapere-Only Defendants "participat[ed] in the wrongful conduct."

2

A.      **Allegations regarding Defendant John Ranald MacDonald**

Mr. MacDonald was allegedly a director of MFGI, CFO of MF Global and a member of

its ALCO Committee until September 2010.  Compl. ¶ 4(l).  As MF Global's public filings

demonstrate, Mr. MacDonald ceased serving as its CFO in March 2011, long before any conduct

relevant to Sapere's lawsuit.  *See* MF Global's Form 8-K, dated May 19, 2011, Ex. 99.1 at 4

(annexed as Exhibit A to Declaration of Helen B. Kim (the "Kim Declaration")).  Nevertheless,

by virtue of being "a director of MFGI and senior member of the Executive Team,"

Mr. MacDonald is alleged to have assisted "in supervising the entire MFGI workforce."  Compl.

¶ 145(d).  Sapere's attempt to hold Mr. MacDonald guilty merely by virtue of his association

with MFGI must be rejected as a matter of law.  *See Airlines Reporting Corp., supra,* 721 F.

Supp. at 585 ("A corporate officer is not held liable for the negligence of a corporation merely

because of his official relationship to it."); Joint Mem. at 10.

The only specific allegation against Mr. MacDonald is his alleged receipt of a single

email on October 17, 2011 from Defendant Vinay Mahajan, stating that MF Global "cannot rely

on FCM cash to meet [its] daily operational needs" and discussing options for generating cash

from other sources.  Compl. ¶¶ 61(i), 62(k).  From this one email, Sapere concludes that

Mr. MacDonald "willfully ignored warnings known to [him], deliberately ignored the truth,

turned a blind eye to the truth and declined to act to safeguard segregated funds, causing the

disappearance of $1.6 billion out of segregated funds."  *Id.* ¶ 61.

Even assuming the truth of the allegation that Mr. MacDonald received Mr. Mahajan's

October 17, 2011 email, there is nothing in this single allegation that would support any

"plausible claim for relief":  Nothing in Mr. Mahajan's email suggests any illegal or improper

use of customer-segregated funds.  Mr. MacDonald is not alleged to have engaged in any

wrongful conduct. And nothing in that email created any duty from Mr. MacDonald to Sapere to take any affirmative action. *See* Joint Mem. at 10-11, 17.

### B.   Allegations Regarding Defendant Matthew V. Besgen

Mr. Besgen was a Senior Vice President in MF Global's Treasury Department. Compl. ¶ 4(x). Sapere generally alleges that, as a member of the Treasury Department, Mr. Besgen was involved in monitoring and reporting on the liquidity of MF Global (*id.* at ¶¶ 22 (d); 23(c); 61(e); 62 (h), (j)), received the analyses of the proper use of the funds belonging to MFGI which were on deposit in accounts with customer segregated and secured funds (*i.e.*, "Firm Invested In Excess") and knew of loans being made using Firm Invested In Cash (*id.* at ¶¶ 54; 59-60; 61(a); 62(c)). These factual allegations simply fail to state a "plausible claim for relief." Mr. Besgen is not alleged to have engaged in wrongful conduct. There are no facts to support the existence of a duty owing by Mr. Besgen to Sapere to take any affirmative action. *See* Joint Mem. at 10-11, 17.

The only detailed facts that are pleaded relating to Mr. Besgen are an allegation that, on July 26, 2011, Edith O'Brien sent him an email reporting that Christine Serwinski was unhappy with the "late hour borrow" and size of a $100 million overnight transfer, even though the amount did not exceed the Firm Invested in Excess. Compl. ¶ 61(a). As Sapere acknowledges, the $100 million overnight transfer occurred when "the Seg excess [was] $127mm." *Id.* ¶ 61(a). Thus, there is no factual predicate to conclude that segregated customer funds were involved in that overnight transfer. Sapere alleges also that Mr. Besgen received a report on October 17 which purported to show a deficit in Firm Invested In Excess. *Id.* ¶ 61(g). However, a deficit in Firm Invested in Excess does not mean that customer funds are being improperly used because, under Rule 30.7, an FCM was required to "secure" only a certain portion of customer funds relating to foreign trades. *See* Joint Mem. at 6-7. Thus, there are no facts to support a finding that Mr. Besgen

4

misused customer funds or had any knowledge of alleged misuse of customer funds.

**C.**     **Allegations Regarding Defendants David Simons and Robert Lyons**

Mr. Simons was the Head of Global Operations at MF Global (Compl. ¶ 4(q)), while

Mr. Lyons was the North American Chief Operating Officer of MFGI (*id.* ¶ 4(v)).  The only

allegations against Defendants Simons and Lyons are that, on October 26, 2011, both were sent

an e-mail by Ms. O'Brien stating, "we cannot afford a SEG issue." *Id.* ¶ 78.  Also, on that day,

as alleged twice in the Amended Complaint, "O'Brien, Lyons and Simons together with others

falsely pretended that $325 million in a BD account at Bank of New York Mellon Bank

comprised an investment of FCM segregated funds in compliance with 17 CFR § 1.25 knowing

that the regulation had not been complied with." *Id.* ¶¶ 61(l), 79.

Although the Amended Complaint summarily asserts that $325 million in a BD account

at Bank of New York Mellon Bank constituted a violation of 17 CFR § 1.25, the Amended

Complaint contains no allegation of facts from which a violation of Rule 1.25 might be inferred.

As the Supreme Court warned in *Iqbal,* "pleadings that … are no more than conclusions[] are not

entitled to the assumption of truth."  556 U.S. at 679.  Yet, Sapere's allegation of a Rule 1.25

violation is just that:  a summary allegation of a rule violation that is not entitled to any

assumption of truth.  Since the Amended Complaint is devoid of any factual allegations

supporting a plausible claim that the $325 million at Bank of New York/Mellon Bank was in

violation of Rule 1.25, this Court cannot accept Sapere's legal conclusions as true.

As for Ms. O'Brien's October 26, 2011 email stating, "We cannot afford a SEG issue,"

Sapere alleges that this email "confirms that the MFG Defendants knew and understood that they

need to conceal the risks they took with customer segregated (SEG) funds from the customers

and from the public."  Compl. ¶ 78.  But nothing in Ms. O'Brien's October 26, 2011 email could

possibly support Sapere's wholly unfounded accusation.  On its face, the email appears to

express Ms. O'Brien's concern for protecting the sanctity of customer-segregated funds.

Without more, neither factual allegation against Messrs. Lyons and Simons "nudges [Sapere's]

claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

### D.    Allegations Regarding Defendant Michael G. Stockman

Mr. Stockman became MF Global's Chief Risk Officer in January 2011, and was

allegedly responsible for monitoring and controlling the risk of transitioning MF Global's

business model from a traditional commodities broker to a full-scale investment bank.  Compl.

¶¶ 4(n), 20, 25.  Sapere makes only three factual allegations relating to Mr. Stockman, none of

which, separately or together, state a "plausible claim for relief."

First, Sapere alleges that Mr. Stockman met with regulators on October 26, 2011, and

complains that he failed to notify the regulators of an alleged violation of 17 CFR §1.25 relating

to monies at Bank of New York Mellon (*id.* ¶¶ 61(l), 79).  This is the very same "violation" that

Sapere asserts against Lyons and Simons.  But as discussed above, Sapere alleges no facts from

which this Court might infer a plausible violation of Rule 1.25.  *See* p. 5, *supra.*  Equally

important, the Amended Complaint does not allege that Mr. Stockman had knowledge of any

such Rule 1.25 violation.  *See* Compl. ¶ 61(l), 79.  As the alleged wrongdoing is a failure to

disclose a violation, the failure to allege Mr. Stockman's knowledge of the purported violation is

fatal to any claim.

Second, Sapere alleges that Mr. Stockman met with the CME on October 27, 2011, to

discuss the CME's concerns regarding MFGI's liquidity.  But the Amended Complaint does not

allege any misconduct by Mr. Stockman at that meeting or any failure to act.  *Id.* ¶ 90.  The mere

allegation of a meeting with regulators cannot support any plausible claim for relief.

Finally, Sapere alleges that Mr. Stockman made a number of recommendations relating to the size of MFG's European sovereign debt trading limits. The Amended Complaint alleges that, between February and June 2011, Mr. Stockman recommended that the Board approve certain increases to these trading limits. *Id.* ¶ 33(h), (i). It further alleges that in July 2011, Mr. Stockman told Mr. Corzine that he did not support any further exposure to European sovereign debt. *Id.* ¶ 62(d). These allegations, even if true, are fundamentally irrelevant to Sapere's claims. Sapere nowhere alleges that Mr. Stockman had any knowledge of, or role in, any illegal or improper use of segregated customer funds.

E.    **Allegations regarding Defendant Dennis A. Klejna**

Mr. Klejna is erroneously alleged to be Deputy General Counsel of MFGI, and contrary to MFGI's public filings, is alleged to be "responsible for legal and regulatory compliance." *Id.* ¶ 4(o). As MFGI's public filings demonstrate, Mr. Klejna was an Associate General Counsel and was not MFGI's compliance officer nor part of MFGI's compliance structure. *See* MFGI's Application to the Federal Reserve Bank of New York to be a Primary Dealer, dated Jan. 10, 2011, at 13-14 & Appendix 13 (annexed as Exhibits B and C to the Kim Declaration).

The Amended Complaint contains two primary factual allegations regarding Mr. Klejna.[2] First, it alleges that, on October 26, 2011, Mr. Klejna had discussions with the CFTC and CME but failed to divulge an alleged violation of 17 CFR § 1.25 arising from $325 million in a BD account at Bank of New York Mellon Bank. Compl. ¶ 61(l). But as discussed above, Sapere alleges no facts from which this Court might infer a plausible violation of Rule 1.25. *See* p. 5,

---

[2] The allegations concerning the so-called "T-Bill swap" (Compl. ¶¶ 157-158) also refer to Mr. Klejna. As discussed in the Individual Defendants' Joint Memorandum, the T-Bill swap allegations fail to state a claim because Sapere lacks standing to assert a private right of action under the CEA, and there is no private right of action for violation of 17 CFR § 166.3. *See* Joint Mem. at 12-15. Even if Sapere could assert a claim for lack of supervision under the CEA, Mr. Klejna – in contrast to the other Individual Defendants named in Count IV – is not alleged to be a "Commission Registrant" or to have an "NFA ID number." *See* Compl. ¶¶ 137-158. Thus, he had no supervisory obligations under 17 CFR § 166.3 or otherwise under the CEA.

*supra.* Equally important, the Amended Complaint does not allege that Mr. Klejna had knowledge of any such Rule 1.25 violation. *See* Compl. ¶ 61(l). As the alleged wrongdoing is a failure to disclose a violation, the failure to allege Mr. Klejna's knowledge of the purported violation is fatal to any cause of action.

Second, the Amended Complaint alleges that, with respect to a $175 million transfer to JP Morgan on October 28, 2011, Mr. Klejna had an affirmative duty "to tell JP Morgan to treat the $175 million as segregated funds" (*id.* ¶ 61(n)) or, "[a]t a minimum … to advise JP Morgan to treat the funds as being customer funds unless and until Defendant Klejna verified that they did not include customer funds" (*id.* ¶ 99). Again, the Amended Complaint contains no allegation that Mr. Klejna knew on October 28, 2011 that the $175 million transfer was wrongful nor any allegation that Mr. Klejna even knew of the transfers before they occurred. *Id.*¶¶ 61(n), 99. Without an allegation that Mr. Klejna had knowledge of the underlying misconduct, any cause of action arising from an affirmative duty to disclose fails to state a claim.

Simply put, Mr. Klejna cannot be held responsible for failing to inform the CFTC, the CME or JP Morgan of facts of which he was not aware. *See, e.g., In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 516-518 (S.D.N.Y. 2011) (dismissing claim on the ground that plaintiffs did not allege that defendant "knew about the underlying breaches of fiduciary duty"). And even if Sapere were permitted to amend its complaint, without basis, to assert that Mr. Klejna had such knowledge, Mr. Klejna could not have been compelled to "blow the whistle" on his client. Numerous federal courts have recognized that attorneys cannot be compelled to act as "whistleblowers" nor held liable for their silence in the absence of an affirmative duty to disclose. *See, e.g., Schatz v. Rosenberg*, 943 F.2d 485, 493 (4th Cir. 1991); *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1124 (5th Cir. 1988), *vacated on other grds*, 492 U.S. 914 (1989). In

short, as counsel, Mr. Klejna had no duty of disclosure to third parties. *E.g., Eaves v. Designs for Finance*, 785 F. Supp. 2d 229 (S.D.N.Y. 2011) (attorney owes fiduciary duties to a party other than his client only under the rarest of circumstances; it is only appropriate when attorney issues an opinion letter which the attorney knows will be relied upon by the third party).

### F.    Allegations Regarding Defendant Matthew M. Hughey

Mr. Hughey became the Regulatory Capital Controller of MFGI in May 2011.  Compl. ¶ 4(z).  Mr. Hughey was allegedly involved in the analyses of the proper use of Firm Invested In Excess.  But nothing in those analyses creates any "plausible claim for relief." *See* p. 4, *supra*. And none of the other factual allegations against Mr. Hughey suggests Mr. Hughey's involvement in any illegal or improper use of customer-segregated funds or other wrongful conduct.  Specifically, Sapere alleges that Mr. Hughey (i) assembled and internally circulated five possible computations for a Proposed Default Risk Charge by FINRA (Compl. ¶ 33(p)); (ii) reviewed a Segregated Fund Report, which he circulated to the Treasury Department, Financial Regulatory Group and Treasury Operations Group (*id.* ¶ 52); (iii) reviewed information with Defendant Serwinski in July 2011, concerning Firm Invested In Excess Amounts over the prior year and found that, using the Net Liquidation Method, the amount had been negative on more than one occasion (*id.* ¶ 50); and (iv) in response to a follow-up request from Defendant Steenkamp, recalculated the excess amounts over the prior year, which confirmed Ms. Serwinski's calculations, and inquired whether anyone knew what caused the instances where the Firm Invested in Excess Amounts was negative (*id.* ¶ 53).  Not one of these factual allegations suggests any improper or wrongful conduct by Mr. Hughey.

Sapere also alleges that, in response to an August 26, 2011 email from Mr. Besgen, advising that he was "being asked on a daily basis to update Jon Corzine on the Daily Seg and

Secured Excess and the drivers of the changes day over day," Mr. Hughey responded that his department did not perform any analysis of "the drivers" of either the Daily Segregated or the Daily Secured Computation. *Id.* ¶ 62(g). Sapere claims that Mr. Hughey's response "reveal[ed] that management at MF Global knew their action and inactions wrongfully jeopardized customer funds." *Id.* ¶ 62. But Sapere's allegation provides no support for its accusation, since Mr. Hughey only provided a response regarding what information his department could provide.

Finally, Sapere alleges that, on some unspecified date, Mr. Hughey, among others, discovered a deficit in the Segregation Statement of approximately $300 million; that the Financial Regulatory Group made an erroneous $540 million manual adjustment, and that Mr. Hughey and Defendant O'Brien "accepted this adjustment and deliberately ignored the truth, either knew that segregated funds had been improperly transferred and/or turned a blind eye to the situation." *Id.* ¶ 100. Again, "pleadings that are no more than [legal] conclusions are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 678. Sapere provides no factual support for his conclusion that Mr. Hughey "deliberately ignored the truth," "knew that segregated funds had been improperly transferred" or "turned a blind eye to the situation." In short, none of the factual allegations against Mr. Hughey gives rise to a "plausible claim."

## CONCLUSION

Although Sapere draws all sorts of legal conclusions about the Sapere-Only Defendants, its sparse factual allegations cannot "nudge[] [Sapere's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. By lumping all the Defendants together and providing only the barest of individualized allegations against them, Sapere has failed to meet even the rudimentary requirements of Rule 8(a). As Sapere has already amended its Complaint and had the benefit of investigative reports of the Chapter 11 Trustee, the SIPA Trustee and Congress, its Amended Complaint should be dismissed as against the Sapere-Only Defendants, with prejudice.

Dated: New York, New York
       December 6, 2013

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Helen B. Kim
Helen B. Kim
2029 Century Park East, Suite 1900
Los Angeles, California 90067
Tel: (310) 282-9430
Fax: (310) 282-2501
hkim@thompsoncoburn.com

*Attorneys for Dennis A. Klejna*


GAGE SPENCER & FLEMING LLP

By: /s/ G. Robert Gage
G. Robert Gage
410 Park Avenue
New York, New York  10002
Tel: (212) 768-4900
Fax: (212) 768-3629
grgage@gagespencer.com

*Attorneys for David Simons and Robert Lyons*


MILBANK TWEED HADLEY & MCCLOY
LLP

By: /s/ Thomas A. Arena
Thomas A. Arena
1 Chase Manhattan Plaza
New York, New York  10005
Tel: (212) 530-5000
Fax: (212) 530-5219
tarena@milbank.com

*Attorneys for Michael G. Stockman*


HERRICK FEINSTEIN LLP

By: /s/ Therese M. Doherty
Therese M. Doherty
LisaMarie Collins
2 Park Avenue
New York, New York 10016
Tel: (212) 592-1400
Fax: (212) 592-1500
tdoherty@herrick.com

*Attorneys for Matthew V. Besgen*


GEIER HOMAR & ROY LLP

By: /s/ David A. Geier
David A. Geier
119 W. Washington Avenue
Madison, Wisconsin 53703
Tel: (608) 333-0001
Fax: (866) 282-1449
dageier@wislaw.net

*Attorneys for Matthew M. Hughey*


AKIN GUMP STRAUS HAUER & FELD
LLP

By: /s/ Robert H. Hotz, Jr.
Robert H. Hotz, Jr.
Estela Diaz
One Bryant Park
New York, New York  10036
Tel: (212) 872-1000
Fax: (212) 872-1002
rhotz@akingump.com

*Attorneys for John Ranald MacDonald*